THE UNIVERSITY OF FLORIDA
COLLEGE REPUBLICANS,
    Plaintiff,

v.                              CASE NO.: 1:26-cv-00063-MW-MJF

DONALD LANDRY, President
of the UNIVERSITY OF FLORIDA,
in his official capacity,
    Defendant.
_____/

## EMERGENCY VERIFIED MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, University of Florida College Republicans ("UFCR" or "Plaintiff"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, respectfully moves this Court for entry of a preliminary injunction requiring Defendant Donald Landry, in his official capacity as President of the University of Florida, to immediately reinstate UFCR as a recognized student organization with full access to the benefits of recognition pending final judgment.  In support, Plaintiff states:

### EMERGENCY NATURE OF MOTION

This motion is filed on an emergency basis under Local Rule 7.1(L). UF deactivated UFCR on March 13, 2026. As a direct result, UFCR has already lost access to recognition-based benefits, including access to campus facilities, communications channels, funding eligibility, and the

ability to host campus events. Each day the deactivation remains in place, Plaintiff suffers ongoing and irreparable injury to core First Amendment rights of speech, association, and political advocacy. Planned events, recruitment, advocacy, and member engagement are being canceled, curtailed, or chilled now, not at some later date. Absent prompt injunctive relief, Plaintiff's constitutional injuries will continue and cannot be adequately remedied by money damages alone.

Plaintiff will promptly provide oral notice to the Clerk's Office that this emergency motion has been filed, as contemplated by Local Rule 7.1(L).

## **INTRODUCTION**

This case involves a straightforward and serious violation of the First Amendment. Plaintiff UFCR is the largest student political organization at UF. UF punitively deactivated and shut down the UFCR, in response to alleged antisemitic viewpoints expressed by a member of UFCR, and in an effort to silence the club and chill its future speech. After the deactivation, UF sought to justify its unlawful decision by providing a false pretext as a basis, asserting that it had acted on "policy," and at the behest of a third-party group, the Florida Federation of College Republicans (FFCR), a group with no authority over or affiliation with UFCR. No specific policy, rule, or law provides UF a lawful basis for the deactivation; no such policy

exists. Instead, UF fashioned, ad hoc, a new "policy" on the spot, created only for the UFCR, allowing UF a new power to remove groups seen to be antisemitic.

Defendant, acting under color of state law, deactivated Plaintiff as a recognized student organization on March 13, 2026, in response to alleged viewpoints expressed by a member of UFCR and in response to controversy surrounding Plaintiff's political expression. Twelve hours later, on March 14, 2026, UF made the purpose of the deactivation clear, by posting a statement on the social media site X, stating:

> The University of Florida was recently informed by the Florida Federation of College Republicans (FFCR) that it has disbanded the local chapter of College Republicans (the Local CR). This request is based on the FFCR's findings that some Local CR members engaged in a pattern of conduct that violated its rules and values, including a recent antisemitic gesture. The FFCR also requested that the university deactivate the Local CR as a registered student organization while it looks to reorganize and pursue reinstatement under new student leadership.

> The University of Florida has emphatically supported its Jewish community and remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community.

Absent from UF's email to UFCR announcing the deactivation, and absent from the press statement, is any mention of a specific "policy" allowing for deactivation based on these circumstances. There was no viewpoint-neutral policy violation by UFCR; instead UF acted because of

3

opposition to perceived viewpoints; namely, perceived antisemitism. Within the same X statement, UF falsely asserted that: "In compliance with its policies, the University of Florida is in the process of deactivating the Local CR as a registered student organization." No such policy allowing for deactivation by an outside, off campus group, exists.

The Supreme Court has long held that a public college may not deny or withdraw recognition from a student group merely because officials disagree with or disfavor the group's views. In *Healy v. James*, the Court held that denial of recognition to a student group at a public college burdened associational rights and that "the mere disagreement of the President with the group's philosophy affords no reason to deny it recognition." 408 U.S. 169, 187-88 (1972). In *Rosenberger v. Rector & Visitors of the University of Virginia*, the Court reaffirmed that viewpoint discrimination is an "egregious form of content discrimination" prohibited in a university forum. 515 U.S. 819, 829 (1995). And in *Christian Legal Society v. Martinez*, the Court recognized that once a university extends official recognition and related benefits to student organizations, it must administer that program under constitutionally valid, viewpoint-neutral rules. 561 U.S. 661, 679-83 (2010).

Here, UF's deactivation of UFCR strips Plaintiff of recognition, facilities access, event-hosting privileges, communications channels, and

funding eligibility because of alleged disapproval of speech and political viewpoints. That is precisely the type of state action the First Amendment forbids.

Preliminary injunctive relief is warranted immediately.

## FACTS

Plaintiff UFCR is a recognized student political organization at the University of Florida located in Gainesville, Florida.  Its purpose is to promote and advocate for conservative political ideas and candidates, host speakers, and engage in campus dialogue and debate on matters of public concern.  UFCR is the largest college republican group in the nation. Unlike other college republican groups, UFCR is characterized by providing a forum to figures of the "New Right" and the hard-right, America-First wing of the GOP, such as James Fishback, Elijah Shaffer, Kai Schwemmer, and others, many critical of the State of Israel and its American lobby.

Defendant is the President of the University of Florida and is sued solely in his official capacity for prospective declaratory and injunctive relief. UF is a public university and an arm of the State of Florida. At all relevant times, Defendant and those acting under his authority acted under color of state law. *Ex parte Young* permits suits for prospective injunctive relief against state officials enforcing allegedly unconstitutional action. 209 U.S. 123 (1908).

UF maintains policies and procedures governing the recognition and operation of student organizations, including criteria for registration, funding eligibility, access to facilities, and disciplinary action. Prior to the events at issue, UFCR was a recognized student organization entitled to the benefits of recognition.

In 2025, a member of UFCR expressed an off-campus viewpoint alleged by some to be anti-Semitic. The verified complaint alleges that the expression occurred in the context of political speech and current events and did not constitute a true threat, incitement, or otherwise unprotected speech.

Following complaints critical of the viewpoint expressed, UF initiated action targeting UFCR's recognized status. On March 13, 2026, UF deactivated UFCR as a registered student organization. The deactivation removed UFCR's access to recognition-based benefits, including funding eligibility, facility reservations, communications platforms, and the ability to host on-campus events.

UF then made its non-neutral "policy" clear. UF's statement on X, posted on March 14, 2026, read:

> The University of Florida was recently informed by the Florida Federation of College Republicans (FFCR) that it has disbanded the local chapter of College Republicans (the Local CR). This request is based on the FFCR's findings that some Local CR

members engaged in a pattern of conduct that violated its rules and values, including a recent antisemitic gesture. The FFCR also requested that the university deactivate the Local CR as a registered student organization while it looks to reorganize and pursue reinstatement under new student leadership.

The University of Florida has emphatically supported its Jewish community and remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community. The university also supports the rights of organizations, such as the FFCR, to take decisive action in addressing conduct that is antithetical to its principles.

In compliance with its policies, the University of Florida is in the process of deactivating the Local CR as a registered student organization. When the FFCR is ready, the university will also assist it with reactivating the Local CR under new student leadership.

UF's stated basis for the deactivation was disagreement with the viewpoint of the contested expression; that UF later attempted to justify the deactivation by claiming it acted at the behest of a third-party group with no authority over UFCR; and that no university policy, rule, or law authorized UF's action.

UFCR, after diligent research, has no knowledge of any other student organization with an alleged affiliated with a national organization be

deactivated by UF.  Only UFCR was dealt with in this way, because UF was singling them out.

UF did not identify any narrowly tailored, content-neutral policy violation by UFCR, and did not provide adequate notice, a meaningful opportunity to be heard, or neutral, consistently applied standards before deactivation.  UF allowed other student organizations to remain recognized notwithstanding controversial or offensive speech by their members.

As a direct result of the deactivation, UFCR has been deprived of its ability to organize, speak, associate, host events, invite speakers, reserve campus spaces, access university funding and resources, and participate fully in the marketplace of ideas on campus. Planned events, speaker engagements, recruitment, and advocacy have been canceled, curtailed, or chilled. These injuries are immediate and ongoing.

UFCR committed no violations of UF's Policy 16-003, "*Registered Student Organization Classification and Officer Eligibility*," and that policy did not authorize the removal of UFCR under these circumstances.

Following complaints critical of the viewpoint expressed, UF initiated action targeting UFCR's recognized status. On March 13, 2026, UF deactivated UFCR as a registered student organization. The deactivation removed UFCR's access to recognition-based benefits, including funding

eligibility, facility reservations, communications platforms, and the ability to host on-campus events. The University also publicly addressed the matter in a post concerning the incident, attached hereto as **EXHIBIT 1**, further confirming the controversy and University action surrounding UFCR.

**LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

A party seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent an injunction; (3) that the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Where First Amendment rights are likely being violated, the irreparable-harm showing is especially strong. The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Eleventh Circuit likewise recognizes that self-censorship and chilled speech constitute cognizable First Amendment harm. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022).

**ARGUMENT**

**I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS FIRST AMENDMENT CLAIMS.**

**A. UF's deactivation of UFCR is unconstitutional viewpoint discrimination.**

The First Amendment prohibits government officials from burdening speech because of hostility to the speaker's viewpoint. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995), describes viewpoint discrimination as an "egregious form of content discrimination." Public universities are not exempt from this rule. To the contrary, "the college classroom with its surrounding environs is peculiarly the 'marketplace of ideas,'" and First Amendment protections apply with special force there. *Healy v. James*, 408 U.S. 169, 180 (1972).

In *Healy*, the Supreme Court held unconstitutional a public college's refusal to recognize a student organization where the denial rested on disagreement with the group's philosophy or fears based on association rather than actual misconduct. Recognition mattered because denial of recognition burdened the group's ability to meet, recruit, and communicate. *Id.* at 181–84, 187–88. That reasoning applies with even greater force where, as here, a university has already granted recognition

and then strips it away because of controversy over protected political speech.

The Supreme Court has also made clear that "the mere dissemination of ideas — no matter how offensive to good taste — on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973). Thus, even offensive or unpopular political expression remains protected absent a lawful, viewpoint-neutral basis for discipline.

The verified allegations establish that UF deactivated UFCR because of opposition to or disapproval of a member's alleged viewpoint, not because of any valid, viewpoint-neutral policy violation. UF did not identify any narrowly tailored, content-neutral rule violation and instead acted in response to controversy over protected expression. At this stage, those allegations establish a substantial likelihood that the deactivation constitutes impermissible viewpoint discrimination.

**B. The speech at issue is protected, and off-campus expression receives especially strong protection.**

School officials may not suppress student expression unless it would materially and substantially disrupt school operations or invade the rights of others. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513

(1969). That rule applies with particular force where the government seeks to punish political expression.

And where speech occurs off campus, the University's authority is even more limited. In *Mahanoy Area School District v. B. L. ex rel. Levy*, 594 U.S. 180 (2021), the Supreme Court held that schools have a diminished interest in regulating off-campus student speech and reaffirmed that even crude or offensive off-campus expression is ordinarily protected absent threats, harassment, or substantial disruption.

Here, the verified allegations are that the relevant expression occurred off campus, involved political viewpoints and current events, and did not constitute a true threat, incitement, or other unprotected category of speech. Nor has UF identified facts showing a material and substantial disruption under *Tinker*. On these allegations, the speech falls squarely within the First Amendment's protection.

**C. Official recognition and access to associated student-organization benefits cannot be withdrawn on the basis of viewpoint.**

Official recognition is not a trivial administrative label. It determines whether a student organization can reserve facilities, communicate through university channels, seek funding, host events, and participate meaningfully in campus life. In *Healy*, the Supreme Court recognized that denial of recognition burdens associational rights precisely because it

impairs a group's ability to exist and function on campus. 408 U.S. at 181–84.

Likewise, once a university opens a program of recognition and benefits to student organizations, it must administer that program under constitutionally permissible, viewpoint-neutral standards. *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 679–83 (2010).

UFCR alleges the deactivation has cost it access to facilities, funding eligibility, communications platforms, and the ability to host events and invite speakers. Those are critical channels through which a student political organization speaks, associates, and participates in campus discourse. The deprivation of those benefits because of disfavored viewpoints is likely unconstitutional.

**D. UFCR is also likely to succeed on freedom-of-association and retaliation claims.**

The First Amendment protects the right of individuals to associate for the advancement of beliefs and ideas. *Healy*, 408 U.S. at 181. UFCR engages in expressive association to advance its political beliefs, sponsor advocacy, host speakers, and organize students around matters of public concern. When the state strips a political student group of official status because of allegedly offensive or unpopular speech, it burdens expressive association directly.

The complaint also plausibly states retaliation and unconstitutional-conditions theories. A public university may not deny a government benefit in retaliation for protected expression. See *Healy*, 408 U.S. at 183–84. By deactivating UFCR because of protected political expression, UF imposed an unconstitutional condition on access to student-organization benefits.

On these allegations, Plaintiff is likely to succeed on the merits of at least one, and likely multiple, First Amendment claims.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE RELIEF.

The irreparable-harm requirement is plainly met. The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Eleventh Circuit applies the same principle in the preliminary-injunction context. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022).

Here, UFCR is suffering ongoing deprivation of its ability to organize, speak, associate, reserve campus spaces, host speakers, access communications platforms, and participate fully in the marketplace of ideas on campus. Planned events, recruitment, and advocacy have already been canceled, curtailed, or chilled. No damages remedy after final

judgment can restore those lost opportunities for speech, organizing, recruitment, and political engagement during the period of unlawful deactivation

## III. THE BALANCE OF EQUITIES FAVORS PLAINTIFF.

The balance of harms overwhelmingly favors Plaintiff. Without an injunction, UFCR continues to lose constitutional rights and organizational opportunities that cannot be restored later. By contrast, requiring UF to restore the status quo ante pending final judgment imposes minimal cognizable harm on Defendant. It merely requires Defendant to reinstate a previously recognized student organization while the Court adjudicates the merits.

If Defendant ultimately prevails, the University remains free to administer lawful, viewpoint-neutral policies. But until then, the harm from denying a political student organization access to campus speech and associational channels is far greater than any temporary administrative burden associated with reinstatement. Where constitutional rights are at stake, the balance of equities ordinarily tips strongly toward preserving those rights.

## IV. AN INJUNCTION SERVES THE PUBLIC INTEREST.

It is always in the public interest to prevent the violation of constitutional rights. The public has a profound interest in ensuring that

public universities do not suppress speech or punish association because of disfavored viewpoints. The university campus is a traditional environment for robust debate and political advocacy, and the "marketplace of ideas" principle applies with special force there. *Healy*, 408 U.S. at 180. Courts have likewise recognized that the public interest "could not possibly be served by the enforcement of an unconstitutional ordinance." *Scott v. City of Daytona Beach*, 689 F. Supp. 3d 1160, 1185 (M.D. Fla. 2023). The requested injunction would preserve, not distort, that marketplace by preventing the government from excluding one student political group based on viewpoint while this case proceeds.

## V. SECURITY SHOULD BE WAIVED OR SET AT A NOMINAL AMOUNT.

Rule 65(c) allows the Court discretion in setting security. Because Plaintiff seeks to vindicate important constitutional rights and the requested injunction merely restores the status quo by reinstating Plaintiff's prior recognition, the Court should require no bond or, alternatively, a nominal bond. Defendant is a public official sued only in his official capacity, and there is little to no risk of monetary harm from temporary reinstatement pending adjudication.

<u>**VERIFICATION AND EVIDENTIARY BASIS**</u>

This motion is verified and supported by the verified complaint, which is incorporated by reference and may be considered as evidence at the preliminary-injunction stage to the extent based on personal knowledge and competent factual allegations. Plaintiff relies on the sworn verification executed by Michael Andre, President of UFCR.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order:

**A.** Finding that this motion presents an emergency requiring prompt consideration;

**B.** Setting an expedited briefing schedule and hearing on this motion at the earliest practicable date;

**C.** Entering a preliminary injunction during the pendency of this action requiring Defendant, his officers, agents, employees, successors, and all persons acting in concert with them to immediately reinstate Plaintiff University of Florida College Republicans as a recognized student organization in good standing;

**D.** Requiring Defendant during the pendency of this action to restore Plaintiff's access to all recognition-based benefits previously available to it, including but not limited to eligibility for funding, access to

17

campus facilities, event-hosting privileges, communications platforms, and other benefits of recognized status;

**E.** Enjoining Defendant during the pendency of this action from denying, restricting, burdening, suspending, deactivating, or otherwise interfering with Plaintiff's recognition or access to recognition-based benefits on the basis of viewpoint or protected expression;

**F.** Waiving bond or requiring only nominal security under Rule 65(c);

**G.** Awarding Plaintiff its attorneys' fees and costs as authorized by law; and

**H.** Granting such other and further relief as the Court deems just and proper.

**Dated**: March 17, 2026.

Respectfully submitted,

/s/ Anthony F. Sabatini
ANTHONY F. SABATINI
Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
Mount Dora, Florida 32757
Telephone: (352) 455-2928

Counsel for Plaintiff

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Emergency Verified Motion for Preliminary Injunction and Incorporated Memorandum of Law and that the facts stated in it, to the extent drawn from the verified complaint and matters within my personal knowledge, are true and correct.

**DATED**: March 16, 2026

*/s/ Michael Andre*
MICHAEL ANDRE
President, University of Florida College Republicans

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(B), undersigned counsel certifies that on 3.17.2026, Plaintiff conferred with Defendant's counsel in accordance with Local Rule 7.1(B); Defendant is opposed to this Motion. Opposing counsel has not filed an appearance in the case yet but remains in contact with Plaintiff's counsel and has been provided the complaint and motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I will promptly provide notice of this emergency filing as required by Local Rule 7.1(L), and that service will be made on Defendant

in accordance with applicable law and the Federal Rules of Civil

Procedure.

/s/ *Anthony F. Sabatini*

# EXHIBIT 1



← **Post**

**FLORIDA** ✔  
@UF                                                                    ...

The University of Florida was recently informed by the Florida Federation of College Republicans (FFCR) that it has disbanded the local chapter of College Republicans (the Local CR).  This request is based on the FFCR's findings that some Local CR members engaged in a pattern of conduct that violated its rules and values, including a recent antisemitic gesture. The FFCR also requested that the university deactivate the Local CR as a registered student organization while it looks to reorganize and pursue reinstatement under new student leadership.

The University of Florida has emphatically supported its Jewish community and remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community. The university also supports the rights of organizations, such as the FFCR, to take decisive action in addressing conduct that is antithetical to its principles.

In compliance with its policies, the University of Florida is in the process of deactivating the Local CR as a registered student organization.  When the FFCR is ready, the university will also assist it with reactivating the Local CR under new student leadership.

7:55 AM · Mar 14, 2026 · **1.8M** Views

💬 982          ⟲ 563          ♡ 2.3K          🔖 549          ⬆

💬 **Read 982 replies**

21