**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UNIVERSITY OF FLORIDA COLLEGE
REPUBLICANS,

*Plaintiff*,

v.

DONALD LANDRY, President of the
University of Florida, in his official
capacity,

*Defendant*.

No.: 1:26-cv-00063-MW-MJF

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant submits this opposition to Plaintiff's motion for a preliminary

injunction (Doc. 7) ("PI Mot.").

**INTRODUCTION**

Until recently, Plaintiff was a registered student organization, or RSO, at the

University of Florida. Last month, however, UF made the decision to deactivate

Plaintiff as an RSO. UF did so because it had been informed by the Florida

Federation of College Republicans ("FFCR")—an organization with permission

from the Republican Party to use the name of that political party—that FFCR had

revoked Plaintiff's charter as a local chapter of FFCR. And, under UF's rules, an

RSO may be deactivated if its parent organization revokes its charter.

The deactivation of Plaintiff as a registered student organization at UF was necessary because, without a charter from FFCR, Plaintiff had no legal authorization to use the name of a political party. Under Florida law, no "club, group, association, or organization of any kind" may use the name of a political party without the written permission of the party's state executive committee. *See* § 103.081(2), Fla. Stat. While FFCR has such permission, Plaintiff does not. Under UF's rules, an RSO is subject to deactivation for violation of state law, and once FFCR revoked Plaintiff's charter, UF could not support Plaintiff's violation of Florida law by maintaining its status as an RSO.

After its deactivation, Plaintiff has stated that it is affiliated, not with FFCR, but with another parent organization, College Republicans of America. Plaintiff has not, however, provided any evidence that this organization is authorized to use the name of the Republican Party. Thus, this new affiliation does not enable UF to register Plaintiff under the name "College Republicans."

In sum, UF deactivated Plaintiff, not because of the latter's viewpoint or any "contested expression," as Plaintiff puts it, but because (1) Plaintiff lost its charter from FFCR, and (2) without that charter, Plaintiff lacks permission to use the name of the Republican Party.

## BACKGROUND

### A.      Registered Student Organizations at UF

Like other universities, UF permits and encourages student groups to register as Registered Student Organizations or RSOs. Tyger Decl. ¶ 7; *see Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 233 (2000) (noting that a "[u]niversity may determine that its mission is well served if students have the means to engage in dynamic discussions of philosophical, religious, scientific, social, and political subjects in their extracurricular campus life outside the lecture hall").[1] UF rules and policies govern RSOs, including the registration process and registration requirements. Tyger Decl. ¶ 8. The Student Engagement office assists student organizations and ensures compliance with UF's rules and policies. *Id*.

The Student Organization Resource Guide published by Student Engagement provides on pages 15 and 17:

> [15] **REGULATIONS AND EXPECTATIONS**
>
> Each registered student organization's purposes and activities shall comply with applicable provisions of the United States Constitution, federal laws, the Constitution of the State of Florida, state laws, rules and regulations of the Board of Governors, the University of Florida Board

---

[1] UF does not, however, require campus groups to register. Tyger Decl. ¶ 7. "A student group may also choose to forego the registration process and exist as a non-registered group. While not afforded the full range of benefits of an RSO, a non-registered group may nevertheless use campus facilities, distribute literature on campus, verbally express its views on campus, and recruit new members." *Beta Upsilon Chi Upsilon Ch. at Univ. of Fla. v. Machen*, 586 F.3d 908, 912 (11th Cir. 2009).

of Trustees, University of Florida, and the University of Florida Student Conduct Code, and the purposes set forth in the Student Body Constitution, and the constitution of the Student organization. The student organization and its officers are responsible and accountable for all actions of the organization. Any violation of law, Board of Governors' rules and regulations, University of Florida Board of Trustees rules and regulations, or University of Florida rules shall be considered as offenses committed by the organization.

\* \* \*

[17] **DEACTIVATION**

AN ORGANIZATION'S REGISTRATION MAY BE SUSPENDED BY STUDENT ENGAGEMENT FOR ANY ONE OR MORE OF THE FOLLOWING REASONS:

**a.** Violation of University statutes, rules, policies, and procedures, and/or state, federal, or local law.

\* \* \*

**d.** The national, regional, or state organization revokes organization's charter or denies affiliation.

**e.** Non-compliance with organization registration procedures and constitution requirements.

\* \* \*

Tyger Decl. ¶ 9 & Ex. A (Student Organization Resource Guide at 15, 17) (updated Sep. 26, 2025).

## B.    Florida Statute 103.081

Section 103.081, Fla. Stat., governs the use of the name of a political party in the State of Florida. The statute provides in part that "No person or group of persons shall use the name, abbreviation, or symbol of any political party, the name,

4

abbreviation, or symbol of which is filed with the Department of State, in connection with any club, group, association, or organization of any kind unless approval and permission have been given in writing by the state executive committee of such party." *Id*. § 103.081(2). *See also* Op. Div. Elections Fla. 076-020 (1976) ("Section 103.081(2), F.S. prohibits any person or group of persons from using the name of any such political party in connection with any group, club, association or organization 'of any kind' absent prior 'approval and permission…' in written form by the state executive committee of such party…'"), https://tinyurl.com/35x7j3ju.

### C.    UF deactivates Plaintiff after FFCR revokes its charter.

In early March 2026, the Chair of FFCR, Angel Aguilar, contacted UF's office of Student Engagement. Tyger Decl. ¶ 10. He identified FFCR as Plaintiff's parent organization. *Id*.

Aguilar advised that FFCR's board had decided "to disaffiliate the University of Florida College Republicans and revoke the chapter's charter." Tyger Decl. ¶ 11 & Ex. B. Aguilar provided a document showing that, on February 15, 2026, the FFCR board had voted "to dissolve the current University of Florida College Republicans chapter[.]" Tyger Decl. ¶ 11 & Ex. C.

Aguilar provided a copy of a Charter granted by the Republican Party of Florida to FFCR for the period March 18, 2025, to March 31, 2027. Tyger Decl. ¶ 15 & Ex. G. Aguilar also provided a copy of the Republican Party of Florida's Party

Rules of Procedure, as approved by the State Executive Committee on January 10, 2026. Tyger Decl. ¶ 16 & Ex. H (excerpted Rules). Rule 1, captioned "Chartering Process for Republican Clubs," states: "No person or group of persons may use the name, abbreviations, or symbols of the Republican Party in connection with any club, group, association, or organization of any kind unless approval and permission have been given by the Republican Party of Florida in the form of a written charter issued under this Rule." Party Rules of Procedure, Rule 1(A)(1) (Ex. H).

Explaining FFCR's decision, Aguilar provided reports stating that Plaintiff or members of it had engaged in "a sustained pattern of unprofessional, discriminatory, extremist, and threatening conduct by the UF College Republicans in a University of Florida affiliated student group chat, including the promotion of Nazi rhetoric, antisemitic and homophobic remarks, public admiration for extremist figures such as Nick Fuentes, and advocacy for anti-democratic and exclusionary ideologies such as white Christian nationalism." Tyger Decl. ¶ 12 & Ex. D at 1. Aguilar also supplied a photograph allegedly showing a member of Plaintiff and another person performing a Nazi-style salute. Tyger Decl. ¶ 13 & Ex. E.

On March 13, 2026, Student Engagement sent an email to Plaintiff informing it of its deactivation. Tyger Decl. ¶ 18. The email stated:

> This email serves as notice that the active registered status of College Republicans has been deactivated in GatorConnect. This follows notification to our office that

the Florida Federation of College Republicans (FFCR), the recognized collegiate auxiliary of the Republican Party of Florida (RPOF), passed a motion to dissolve and reorganize the College Republicans chapter.

Based on this notification regarding the status of the chapter within its governing organization, the group has been listed as inactive in GatorConnect.

If your organization wishes to appeal this decision, you may do so by submitting a written appeal to seorganizations@ ufsa.ufl.edu. Appeals must be submitted within five (5) class days of the date of this email.

Please let our office know if you have any questions.

Tyger Decl. ¶ 18 & Ex. I.

UF's decision to deactivate Plaintiff was based on its rule that "An organization's registration may be suspended by Student Engagement for any one or more of the following reasons: … d. The national, regional, or state organization revokes organization's charter or denies affiliation." Student Organization Resource Guide 17. *See* Tyger Decl. ¶ 19 & Ex. A. The deactivation decision was also based on UF's rule that an organization's registration may be suspended for "a. Violation of University statutes, rules, policies, and procedures, and/or state, federal, or local law." Student Organization Resource Guide 17. *See* Tyger Decl. ¶ 20 & Ex. A.

The next day, UF issued a public statement about Plaintiff's deactivation. Tyger Decl. ¶ 21. The statement read:

7

The University of Florida was recently informed by the Florida Federation of College Republicans (FFCR) that it has disbanded the local chapter of College Republicans (the Local CR).  This request is based on the FFCR's findings that some Local CR members engaged in a pattern of conduct that violated its rules and values, including a recent antisemitic gesture. The FFCR also requested that the university deactivate the Local CR as a registered student organization while it looks to reorganize and pursue reinstatement under new student leadership.

The University of Florida has emphatically supported its Jewish community and remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community. The university also supports the rights of organizations, such as the FFCR, to take decisive action in addressing conduct that is antithetical to its principles.

In compliance with its policies, the University of Florida is in the process of deactivating the Local CR as a registered student organization.  When the FFCR is ready, the university will also assist it with reactivating the Local CR under new student leadership.

**MESSAGE FROM PRESIDENT LANDRY**

*Interim President*

March 14, 2026

The University of Florida was recently informed by the Florida Federation of College Republicans (FFCR) that it has disbanded the local chapter of College Republicans (the Local CR). This request is based on the FFCR's findings that some Local CR members engaged in a pattern of conduct that violated its rules and values, including a recent antisemitic gesture. The FFCR also requested that the university deactivate the Local CR as a registered student organization while it looks to reorganize and pursue reinstatement under new student leadership.

The University of Florida has emphatically supported its Jewish community and remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community. The university also supports the rights of organizations, such as the FFCR, to take decisive action in addressing conduct that is antithetical to its principles.

In compliance with its policies, the University of Florida is in the process of deactivating the Local CR as a registered student organization. When the FFCR is ready, the university will also assist it with reactivating the Local CR under new student leadership.

Tyger Decl. ¶ 21 & Ex. J.

After the deactivation decision, Mr. Aguilar provided to UF a "letter of recognition," dated August 21, 2025, from FFCR to Student Engagement that "formally affiliate[d]" Plaintiff with FFCR. Tyger Decl. ¶ 22 & Ex. K. UF's understanding is that FFCR's affiliation with Plaintiff permitted the latter to use the name of the Republican Party. Tyger Decl. ¶ 22.

In a March 14, 2026 post on Instagram, Plaintiff stated that FFCR is "an organization that we are not a part of that has no authority over our chapter. We are proud members of a different organization, @uscollegegop." Tyger Decl. ¶ 23 & Ex. L.



*Id.*

That organization, College Republicans of America ("CRA"), announced Plaintiff as a new chapter in a March 2, 2026 Instagram post.



Tyger Decl. ¶ 24 & Ex. M. CRA's website indicates it has only one chapter in Florida, at Saint Leo's University. Tyger Decl. ¶ 25 & Ex. N.

On March 14, 2026, Plaintiff appealed the deactivation decision. Tyger Decl. ¶ 26 & Ex. O. On April 1, 2026, UF denied Plaintiff's appeal. Tyger Decl. ¶ 27 & Ex. P.

Records possessed by Student Engagement are consistent with the view that, at least in years past, Plaintiff was a chapter of the FFCR. A draft constitution from 2017 referred to Plaintiff as "the University of Florida College Republicans

11

Chapter." Tyger Decl. ¶ 28 & Ex. Q. *See* Ex. Q at 1 ("This is the Constitution of the University of Florida College Republicans Chapter."). The draft constitution also referred to the Political Director as being the officer "responsible for maintaining a healthy relationship with … Florida Federation of College Republicans." Ex. Q at 2 (Art. VI, Part 3).

In addition, Plaintiff's registration forms from 2021 and 2022, under the heading "Signature Events and Activities," refer to "Florida Federation of College Republican Quarterly Conferences throughout the state." Tyger Decl. ¶ 29 & Exs. R and S.  *See* Ex. R at 3 ("Signature Events and Activities" section); Ex. S at 3 (same). These documents contribute to Student Engagement's understanding that, in the past, Plaintiff sought registration as a local chapter of FFCR and was registered as an RSO on that basis. Tyger Decl. ¶ 29.

UF has not received from Plaintiff evidence that the Republican Party of Florida has given CRA permission to use the party's name in Florida. Tyger Decl. ¶ 30. CRA's website implies that the Florida Republican Party has not given such permission. *Id*. (citing Will Donahue, *Nine State Federations Charter with College Republicans of America in Historic Independence Day Realignment,* Coll. Republicans of Am. (July 4, 2025), https://www.uscollegegop.com/news/july-4-2025).

Plaintiff commenced this action on March 16, 2026. *See* Compl. (Doc. 1).

## PRELIMINARY INJUNCTION STANDARDS

"[A] plaintiff faces … a tough road in establishing four prerequisites to obtain a preliminary injunction[.]" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). A plaintiff must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id*. at 1247 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam)). "A preliminary injunction is an 'extraordinary and drastic remedy,' and [a plaintiff] bears the 'burden of persuasion' to clearly establish all four of these prerequisites." *Id*. (quoting *Siegel*, 234 F.3d at 1176). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd*., 557 F.3d 1177, 1198 (11th Cir. 2009).

The bar a plaintiff must clear to obtain preliminary relief is set even higher when a mandatory injunction is sought. "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Powers v. Sec'y, Fla. Dep't of Corr*., 691 F. App'x 581, 583 (11th Cir. 2017) (per curiam) (cleaned up) (citing *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)); *see*

13

*also Brown v. Young*, No. 4:25-cv-419-MW/MJF, 2025 WL 3171160, at *4 (N.D. Fla. Nov. 13, 2025) (same). A motion that seeks reinstatement of a student organization seeks mandatory relief. *See Tampa Bay Students for Democratic Soc'y v. Univ. of S. Fla.*, No. 8:25-cv-02752-SDM-AAS, 2026 WL 76406, at *9 (M.D. Fla. Jan. 9, 2026); *see also Brown*, 2025 WL 3171160, at *4 (applying mandatory injunction standard to plaintiff who sought "reinstatement to her previous position").

## ARGUMENT

I.    **Plaintiff Has Not Clearly Shown a Substantial Likelihood of Success on the Merits.**

Plaintiff recognizes that UF is "free to administer lawful, viewpoint-neutral policies." PI Mot. 15. That is what UF has done here.

The Supreme Court has held that a university may limit a student group's access to an RSO program so long as the rules limiting access are "reasonable and viewpoint neutral." *Christian Legal Soc'y Ch. of Univ. of Cal. v. Martinez*, 561 U.S. 661, 679 (2010). Here, UF's rules provide that an RSO may be deactivated if its parent organization revokes its charter or if the RSO violates the law. *See* Student Organization Resource Guide 17 (Tyger Decl. Ex. A). These are reasonable, viewpoint-neutral rules. UF applied these rules to deactivate Plaintiff.

The declaration of James Tyger attests that these are the reasons UF deactivated Plaintiff. Tyger Decl. ¶¶ 19–20. UF did not deactivate Plaintiff "at the behest" of FFCR, as Plaintiff contends. PI Mot. 2; *contra* Tyger Decl. Ex. P.

14

UF did not deactivate Plaintiff "because of opposition to or disapproval of a member's alleged viewpoint[.]" PI Mot. 11. Plaintiff points to UF's public statement on March 14, 2026. *Id.* at 6–9; *see* Tyger Decl. Ex. J. UF stated that FFCR disbanded Plaintiff based on "a pattern of conduct that violated its rules and values, including a recent antisemitic gesture." Tyger Decl. Ex. J. UF also expressed its "emphatic[] support [for] its Jewish community" and stated that it "remains committed to preventing and addressing antisemitism and other forms of discrimination and harassment that are threatening and disruptive to our students and to the teaching, research and expressive activities of the campus community." *Id.* The public statement explained that "*[i]n compliance with its policies*, [UF] is in the process of deactivating the Local CR as a registered student organization." *Id.* (emphasis added). Those policies permitted Plaintiff's deactivation because Plaintiff lost its charter from its national organization and because Plaintiff had no authorization to use the name of the Republican Party. Thus, neither Plaintiff's speech, nor FFCR's views, was the basis for UF's action. *Cf. Oakes Farms Food & Distrib. Servs., LLC v. Adkins*, 154 F.4th 1338, 1345–46 (11th Cir. 2025).

Although Plaintiff accuses UF of "false pretext" (PI Mot. 2), this Court may and should presume Mr. Tyger's sworn declaration was made in good faith. *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020) ("The University is a public entity and an arm of the state government of Illinois, and therefore receives

15

the presumption that it acts in good faith."); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."), *aff'd,* 563 U.S. 277 (2011); *cf. Beta Upsilon Chi*, 586 F.3d at 917 (holding that UF's change in policy to permit student group's registration mooted appeal and refusing to credit group's "speculation" that "UF amended the Policy as a ploy … and UF may reinstate its former policy"). It is Plaintiff's burden to prove that it is clearly likely to succeed on the merits; it has not carried that burden.

Plaintiff states that, "after diligent research, [it] has no knowledge of any other student organization with an alleged affiliat[ion] with a national organization be[ing] deactivated by UF. Only [Plaintiff] was dealt with in this way, because UF was singling them out." PI Mot. 7–8. Not so. UF recently deactivated a student organization because its national parent organization revoked its local charter. Tyger Decl. ¶ 31. Thus, "Plaintiff is not the only student organization UF has deactivated based on the revocation of its charter by is national parent organization." *Id*.

UF's enforcement of its reasonable, viewpoint-neutral rules to comply with Florida law forecloses Plaintiff's First Amendment free-speech claims, Doc. 1 ¶¶ 18–24, 29–32 (Counts I & III), and also its freedom-of-association claim, *id.* ¶¶ 25–28 (Count II). *See Chistian Legal Soc'y*, 561 U.S. at 697 ("Finding Hastings'

16

open-access condition on RSO status reasonable and viewpoint neutral, we reject CLS's free-speech and expressive-association claims."); *id*. at 681 ("[I]t would be anomalous for a restriction on speech to survive constitutional review under our limited-public-forum test only to be invalidated as an impermissible infringement of expressive association.").

## II.    Plaintiff Has Not Clearly Shown Irreparable Injury.

Plaintiff has not fulfilled the second prerequisite to preliminary relief: It has not carried its burden to show clearly that it will suffer irreparable injury without a preliminary injunction. "A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel*, 234 F.3d at 1176 (cleaned up). Thus, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary relief improper." *Id*.

Plaintiff leans on the principle that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." PI Mot. 14 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But the Eleventh Circuit has rejected the notion that "a violation of constitutional rights always constitutes irreparable harm," saying that its "case law has not gone that far[.]" *Siegel,* 234 F.3d at 1177. *Siegel* explained: "The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment

17

claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." *Id*. at 1178.

Here, Plaintiff's ability to speak has not been "prevented altogether." *Id*. Although some speech-facilitating benefits are reserved for RSOs, a student group may continue to speak, including on campus, as a non-registered organization. *See Beta Upsilon Chi*, 586 F.3d at 912 ("While not afforded the full range of benefits of an RSO, a non-registered group may nevertheless use campus facilities, distribute literature on campus, verbally express its views on campus, and recruit new members."); Tyger Decl. ¶ 7.

Nor has Plaintiff's speech been "chilled." In fact, the evidence is to the contrary. Plaintiff's own post-deactivation social media post on March 14 declared that "WE ARE NOT GOING ANYWHERE." Tyger Decl. ¶ 23 & Ex. L.

Plaintiff asserts that "Planned events, recruitment, and advocacy have already been canceled, curtailed, or chilled." PI Mot. 14. But a "[p]laintiff's conclusory allegations of chill do not suffice." *Students for Just. in Palestine at Univ. of Fla. v. Rodrigues*, No. 1:23-cv-275-MW/MJF, 2024 WL 2705566, at \*2 (N.D. Fla. Feb. 1, 2024); *cf. also Isle of Dreams, LLC v. City of North Bay Village*, 513 F. App'x 917, 920 (11th Cir. 2013) (per curiam) ("'Allegations of a subjective chill' alone are not enough" to establish "imminent injury from a chilling effect" for purposes of Article III standing. (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Plaintiff holds

weekly meetings, and held meetings on the UF campus on March 24 and 31, 2026. Tyger Decl. ¶ 32 & Ex. T. On March 25, Plaintiff declared: "Thanks so much for an awesome first meeting as a 'disbanded' organization! There is nothing that will stop us from motivating and empowering the next generation of conservative leaders." Tyger Decl. ¶ 32 & Ex. U.

Finally, any harm to Plaintiff from deactivation is reparable, not irreparable. While currently unregistered, Plaintiff may apply for RSO status. It need only submit an application complying with registration requirements. Plaintiff must comply with § 103.081(2), Fla. Stat., if it wants to "use the name, abbreviation, or symbol of any political party." *Id*. Or Plaintiff may apply for registration without using a political party's name.

### III. The Balance of Harms and the Public Interest Do Not Clearly Favor an Injunction.

The third and fourth preliminary injunction factors also cut against issuing an injunction. These factors merge when a government entity opposes the injunction. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

Plaintiff has not shown that the "injury to [it] outweighs whatever damage the proposed injunction may cause" to UF. *Wreal*, 840 F.3d at 1247 (quoting *Siegel*, 234 F.3d at 1176). UF would suffer irreparable injury if it were forced to re-register Plaintiff because that would force UF to assist Plaintiff's violation of Florida law, i.e., Section 103.081. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts,

C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers))); *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) (same). On the other side of the ledger, Plaintiff has no prerogative to violate Florida law.

Nor has Plaintiff shown that "the injunction would not be adverse to the public interest." *Wreal*, 840 F.3d at 1247 (quoting *Siegel,* 234 F.3d at 1176). The public interest is advanced by complying with Section 103.081. The proposed injunction would facilitate Plaintiff's violation of state law. And it would require UF to enable that violation.

## IV.   Defendant Does Not Request Security.

Defendant does not ask the Court to require Plaintiff to "give[] security." Fed. R. Civ. P. 65(c).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary injunction should be denied.

Dated:  April 3, 2026

Respectfully submitted,

<u>/s/ *H. Christopher Bartolomucci*</u>
H. Christopher Bartolomucci
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com

*Counsel for Defendant*

21

22

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that the foregoing Brief in Opposition to Motion for Preliminary Injunction complies with the word limitation set forth in Local Rule 7.1(F) because it contains 4,056 words excluding those portions exempted pursuant to the rules.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci