IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THE UNIVERSITY OF FLORIDA
COLLEGE REPUBLICANS,

     *Plaintiff,*

v.                          Case No.:  1:26cv63-MW/MJF

DONALD LANDRY, President of
the UNIVERSITY OF FLORIDA, in his
official capacity,

     *Defendant.*

_____/

## ORDER FOLLOWING BENCH TRIAL

On March 13 of this year, Defendant, the University of Florida ("UF"), deactivated Plaintiff, the UF College Republicans ("UFCR"), from its status as a Registered Student Organization. UFCR claims this decision was made because of its speech, specifically, a photo of at least one of its members performing a Nazi salute. UF responds that its deactivation of UFCR was the result of noncompliance with a viewpoint-neutral policy governing Registered Student Organizations.

The governing law is crystal clear. UF cannot deactivate UFCR based on its viewpoint. *Healy v. James*, 408 U.S. 169, 181–82 (1972); *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819 (1995). Conversely, enforcement of a policy that imposes viewpoint neutral conditions for maintaining status as a Registered Student Organization does not burden UFCR's First Amendment rights.

*Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 694–97 (2010). Where there are competing justifications for deactivation, as here, UFCR must show the alleged unconstitutional motive was the but-for cause of its injury. *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006). Put another way, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman*, 547 U.S. at 260. Following a bench trial,[1] this Court concludes UFCR has not met its burden of demonstrating its speech was the but-for cause of its deactivation, and consequently, judgment is due to be entered in favor of Defendant UF.

There are three factual questions this Court must resolve following the bench trial: (1) who decided to deactivate UFCR, (2) whether UFCR's speech was a motivating factor in that decision, and (3) whether UFCR's speech was the but-for cause of that decision. It's undisputed that on March 3, 2026, Angel Aguilar, an individual affiliated with the Florida Federation of College Republicans ("FFCR")— a separate organization from UF and UFCR—began contacting the UF Department

---

[1] Plaintiff brought First Amendment claims under 42 U.S.C. § 1983 against Donald Landry, in his official capacity as President of the University of Florida ("UF"), for (1) viewpoint discrimination, (2) violation of freedom of association, and (3) retaliation based upon UF's deactivation of Plaintiff as a Registered Student Organization. ECF No. 1. This Court notes that while UFCR's motion for summary judgment, ECF No. 47, and trial brief, ECF No. 50, also argue that UF denied it procedural due process, such a claim was not raised in the complaint and thus is not before this Court.

of Student Engagement ("Student Engagement") and alleging that (1) UFCR had engaged in antisemitic conduct, including the Nazi salute, (2) FCCR was the parent affiliate of UFCR and had voted to dissolve the UFCR chapter, and (3) UFCR lacked permission to use the term "Republican." If true, Mr. Aguilar's second and third allegations would amount to violations of UF's Student Organization Resource Guide and grounds for deactivation.

The nub of this case is why UF deactivated UFCR. UFCR's position is that UF's administration was preoccupied with UFCR's members' speech and pressured Student Engagement to marshal a policy violation as pretext to remove UFCR from campus. UF responds that while UFCR's members' speech concerned the university and necessitated a public response, the deactivation decision was made solely by Student Engagement based on a reasonable belief that UFCR was in violation of University policy.

This Court begins with who decided to deactivate UFCR. At trial, witnesses from UF—both in the administration and Student Engagement—testified uniformly that Student Engagement alone made the deactivation decision and the administration put no pressure on them to do so. Of course, UF employees testifying as such does not automatically make it so. This Court instead must review all the evidence before it, including UF employees' testimony, and decide what to believe.

There was little direct evidence in this case connecting Student Engagement's decision with UF's administration. UFCR's counsel nonetheless did a remarkable job of connecting the data points available to him and arguing that the circumstantial evidence in this case creates a convincing mosaic that UF's administration drove the deactivation decision. UFCR's best evidence for this proposition is twofold. First, the evidence at trial demonstrated that once the administration became involved with the public controversy surrounding the Nazi salute, Student Engagement's deactivation process rapidly accelerated. Second, Heather White, the boss of Student Engagement leader Dr. James Tyger, was actively communicating with both Dr. Tyger and the administration regarding the university's response during the relevant period, though the substance of many of these communications remains unclear. What's more, this Court found Dr. Tyger's testimony and demeanor regarding his communications with Ms. White "squirrelly," to say the least. This Court would not be surprised if there were more to Dr. Tyger and Ms. White's communications than his testimony suggested.

But even if the administration exerted pressure on Dr. Tyger, nothing suggests that pressure seeped into Student Engagement's decision. This Court found the two other Student Engagement witnesses, Solange Douglas and Andrea Leemon, to be credible. Ms. Douglas and Ms. Leemon both testified that they and Dr. Tyger collectively decided to deactivate UFCR. Further, they both testified that they

4

experienced no pressure from the administration and no pressure from Dr. Tyger to make that decision. It also matters that Ms. Douglas was the first point of contact for Mr. Aguilar. Rather than UFCR's potential policy violations being foisted on her from above, they came to her from a third party not involved with UF. Therefore, this Court finds only that Student Engagement—Dr. Tyger, Ms. Douglas, and Ms. Leemon—made the decision to deactivate UFCR.

The next inquiry is whether UFCR's speech was a motivating factor in Student Engagement's decision to deactivate UFCR. Maybe. Dr. Tyger was clearly in contact with members of the administration during this time, and, contrary to his testimony, this Court agrees he was probably aware of the administration's desire to get UFCR off campus because of its speech. Dr. Tyger may have been motivated by UFCR's speech or been happy with Student Engagement's decision to deactivate UFCR.

But where UFCR's proof fails is in this Court's last inquiry—whether UFCR's speech was the but-for cause of Student Engagement's deactivation. Again, this Court agrees with UFCR that UF's administration was laser-focused on UFCR's members' antisemitic speech. Mr. Orlando testified that UF has the largest Jewish student population of any university in the country and that the University needed to "get out in front of" the considerable social media controversy surrounding the Nazi salute photo. This Court finds UF's administration was glad to get rid of UFCR,

whatever the justification may be, and this Court believes Dr. Tyger was aware of that desire.

But for the same reasons discussed above, while Dr. Tyger may have had some improper motive, nothing suggests that he coerced, pressured, or otherwise influenced Ms. Douglas and Ms. Leemon to deactivate UFCR based upon that motive. And nothing suggests Ms. Douglas and Ms. Leemon themselves had any sort of animus toward UFCR's speech as they investigated Mr. Aguilar's complaints and ultimately chose to deactivate. While Mr. Aguilar may have had an axe to grind based on UFCR's speech and deployed the affiliation and branding issues to ensure its deactivation under UF policy, his motivations as a third party need not pass constitutional matter. All that matters is whether UFCR has met its burden of establishing, by the preponderance of the evidence, that its speech was the but-for cause of Student Engagement's—Dr. Tyger, Ms. Douglas, and Ms. Leemon's—decision to deactivate. It has not.

Though not determinative, this Court finds Student Engagement's determination that UFCR was in violation of UF's Student Organization Resource Guide to be reasonable. UFCR's president Michael Andre credibly testified that, while FFCR and UFCR occasionally coordinated operations, UFCR was never formally affiliated or chartered by FFCR, and therefore, FFCR could not revoke its charter as Student Engagement believed it had. But while this Court agrees that

FFCR and UFCR were in fact never formally affiliated, Student Engagement's decision that they were based upon the evidence provided to them was a reasonable mistake. Moreover, this Court finds that Student Engagement was correct that UFCR was, in fact, using the "Republican" name in violation of UF policy. While FFCR had a charter from the Republican Party of Florida ("RPOF") to use the term "Republican," UFCR had neither (1) permission to use the term by virtue of an affiliation with FFCR nor (2) independent permission to use the term, and therefore, deactivation was an available remedy under UF's Student Organization Resource Guide.

One final note. This Court does not condone antisemitism or any other hate speech. But the impetus for this case was a concerted effort by non-state actors—other college conservatives—to silence UFCR. While it may be constitutional for a non-state actor to try and torpedo other student organizations based upon their speech, it is nonetheless antithetical to the marketplace of ideas which has historically been fostered at our universities.

In sum, this Court finds UF's Department of Student Engagement, specifically, Dr. Tyger, Ms. Douglas, and Ms. Leemon, collectively made the decision to deactivate UFCR, and that UFCR's speech was not the but-for cause of its deactivation. Therefore, UFCR has not met its burden. Accordingly, the Clerk

shall enter judgment stating, "Plaintiff's claims against Defendant are **DISMISSED with prejudice**." The Clerk shall close the file.

**SO ORDERED on June 12, 2026.**

<u>**s/Mark E. Walker**</u>
**United States District Judge**